## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>DEIDRE RANA DONNERSON,<br><br>    Debtor. | Case No. 17-28465<br>Chapter 13<br>Judge Delk |
| DEIDRE RANA DONNERSON,<br><br>    Movant,<br><br>v.<br><br>LAKEVIEW LOAN SERVICING, LLC,<br><br>    Respondent. | CONTESTED MATTER |

### RESPONSE IN OPPOSITION TO DEBTOR'S AMENDED MOTION UNDER RULE 3002.1 AND REQUEST FOR SANCTIONS

COMES NOW, Lakeview Loan Servicing, LLC ("Lakeview"), and files this Response in Opposition to the Debtor's Amended Motion Under Rule 3002.1 and Request for Sanctions [Doc. 41] (the "3002.1 Motion"), respectfully showing this Honorable Court as follows:

### INTRODUCTION

Through the 3002.1 Motion, the Debtor has raised a number of issues without raising any issues at all. That is because the Motion contains nothing but unfounded conclusions and leaves Lakeview in the dark about why the Debtor believes that Lakeview's Rule 3002.1 Notice is deficient, and more importantly, why the Debtor and her attorney have lodged serious allegations against Lakeview and its counsel, seeking sanctions for an unidentified "systemic problem." Rule 9013 requires that parties filing motions in bankruptcy cases set forth their motions "with

1

particularity." The Debtor has failed to do so, in any event, the fees requested by the Rule 3002.1 notice are proper and reasonable. The 3002.1 Motion must be denied.

## RELEVANT FACTS AND PROCEDURAL HISTORY

The facts here are short and straightforward. On February 5, 2018, Lakeview filed a Proof of Claim (Claim No. 29), in the amount of $133.89. Then, on July 27, 2018, Lakeview filed a Notice of Postpetition Mortgage Fees, Expenses, and Charges (the "3002.1 Notice"). [Doc. 34]. The 3002.1 Notice stated that $425.00 in fees were incurred postpetition for the Proof of Claim. *Id.*

On August 29, 2018, the Debtor filed the 3002.1 Motion. The Motion is skeletal and states, without any reasoning, that the 3002.1 Notice "fails to confirm with the requirements of Rule 3002.1 and should be disallowed." [Doc. 41] at p. 1. It goes on to state that "[t]he asserted post petition mortgage fees, expenses, and charges in the notice file on July 27, 2018 are improper, unearned, exorbitant and unreasonable, and are not subject to reimbursement and should be disallowed." *Id.* Then, without any supporting facts or argument, the Debtor asks "[t]hat the court determine that the actions and or charges complained of are part of a systemic problem, and that sanctions be awarded against attorney Lisa Caplan, Rubin Lublin TN, PLLC, attorney Natalie Brown and Lakeview." *Id.* at p. 2. The next paragraph repeats this language, but replaces "sanctions" with "attorney fees and costs." *Id.*

The Debtor has no factual or legal basis for any of the issues she complained of, and the 3002.1 Motion should be denied in its entirety.

## ARGUMENT AND CITATION OF AUTHORITY

**A.    THE MOTION FAILS TO COMPLY WITH RULE 9013**

Initially, the 3002.1 Motion should be denied because the Debtor has failed to comply with Fed. R. Bankr. P. 9013. This rule provides that any written motion "shall state with particularity the grounds therefor . . . ."

> A proper motion will contain factual allegations concerning the various requirements necessary for the relief being sought. Conclusory allegations or a mechanical recitation of those elements will not suffice; the motion should allege facts supporting those conclusions or satisfying those elements. In other words, the movant should plead the essential facts that it expects to prove at trial: facts that, if true, would make a prima face showing that it is entitled to the relief it seeks.

*In re White*, 409 B.R. 491, 494 (Bankr. N.D. Ind. 2009). Failure to comply with Rule 9013 is grounds for denying a motion. *Id.*; *see also In re Wilson*, 336 B.R. 338, 345 n.8 (Bankr. E.D. Tenn. 2005).

Here, the Debtor has made no attempt to comply with Rule 9013. There are no facts anywhere in the 3002.1 Motion that even remotely support the conclusion that the fees identified in the 3002.1 Notice are "improper, unearned, exorbitant, and unreasonable" or that the Notice "fails to conform with the requirements of Rule 3002.1." [Doc. 41] at p. 5. Additionally, there are no facts alleged whatsoever to support a claim for sanctions, or even an identification of the authority that the Debtor is attempting to obtain them under.[1] As such, Lakeview has been left in the dark about what it is actually defending against here, which is patently unfair. This Court should find that the Debtor's failure to set forth the 3002.1 Motion with particularity is fatal, and deny it outright.

---

[1] The undersigned attempted to obtain clarification on the telephone from the Debtor's attorney concerning what she contends is incorrect with the 3002.1 Notice or what actions she believes are sanctionable, but was given no facts whatsoever during that phone call, simply more conclusions.

**B.    THERE ARE NO ISSUES WITH THE 3002.1 NOTICE**

The Debtor may not have attempted to set forth her motion with particularity because there simply are no facts whatsoever to support her conclusions regarding the 3002.1 Notice. Under Rule 3002.1(c),

> The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence. The notice shall be served within 180 days after the date on which the fees, expenses, or charges are incurred.

If a debtor or trustee disagrees with the amounts set forth in such a notice, they have one year to file a motion asking the Court to "determine whether payment of any claimed fee, expense, or charge is required by the underlying agreement and applicable nonbankruptcy law to cure a default or maintain payments in accordance with § 1322(b)(5) of the Code." Fed. R. Bankr. P. 3002.1(e). Notably, the rule only allows for sanctions to be imposed if the claim holder *failed* to disclose fees in a notice, but not for disclosing a fee that the debtor thinks is unreasonable. *Se* Fed. R. Bankr. P. 3002.1(i).

Here, there is no coherent argument that the claimed fees are not permitted by the Deed of Trust securing Lakeview's clam, or that nonbankruptcy law does not permit the fees to be passed on to the Debtor. Additionally, the Debtor cannot seriously claim with a straight face that the 3002.1 Notice "fails to confirm with the requirements of Rule 3002.1."

### 1.    The 3002.1 Notice complies with the requirements of Rule 3002.1

First, the Debtor states that the 3002.1 Notice "fails to conform with the requirements of Rule 3002.1 and should be disallowed." [Doc. 41] at p. 1. Under Rule 3002(d), "[a] notice filed and served under subdivision (b) or (c) of this rule shall be prepared as prescribed by the appropriate Official Form, and filed as a supplement to the holder's proof of claim. The notice is

not subject to Rule 3001(f)." The Official Form is 410S2, and that is exactly what Lakeview used

for its 3002.1 Notice. As such, the Debtors objections on this basis must be overruled.

### 2. *The claimed fees are allowed by the underlying agreement and nonbankruptcy law*

Section 7 of the Deed of Trust states that, in the event of a bankruptcy proceeding, the

"Lender may do and pay whatever is necessary to protect the value of the Property and Lender's

interest in the Property . . . ." [Claim 29-1, Part 3] at p. 5. Any amounts disbursed under this

section become additional debt secured by the Deed of Trust. *Id.* Additionally, Section 8 of the

Deed of Trust states that "Lender may collect fees and charges authorized by the Secretary [of

HUD]." *Id.* The Secretary of Housing and Urban Development issued Mortgagee Letter issued

Mortgagee Letter 2016-03, attached hereto as **Exhibit "A"**, which explicitly allows mortgagees

on FHA insured loans (such as the Debtor's loan) to pass on attorney's fees for certain

bankruptcy relates services to the debtor. Specifically, a mortgagee is permitted to require a

debtor to pay up to $650 for proof of claim preparation and plan review in Chapter 13 cases. *See*

Ex. A at Attachment 3, p. 3.[2] Accordingly, Lakeview was within its rights to assess a fee of $425

for the proof of claim preparation and filing. As the fee was permitted by the Deed of Trust and

nonbankruptcy law, the 3002.1 Motion must be denied.

While reasonableness of fees is not mentioned by Rule 3002.1, even if that is relevant,

the $425 fee was clearly reasonable and was, in fact, charged by Rubin Lublin TN, PLLC and

paid by Lakeview's servicer, LoanCare, LLC. *See* Invoice number 312201 attached hereto as

**Exhibit "B"**; Check No. 5002747096, attached hereto as **Exhibit "C"**.

The $425.00 legal fee charged for the filing of a Proof of Claim includes the following

services:

---

[2] If the amount charged by the attorney is higher, only a maximum of $650 can be passed on to
the borrower/debtor.

a)   Evaluation of the referral

- Determine from a list of 13 different items[3] whether our office has all documents and information needed to properly prepare the POC. All of these items must be either added to the Rubin Lublin TN, PLLC case management system notes or uploaded to its documents. If any item is not available, it must be requested from our client.

- Redact personal identifiers on all supporting documents (i.e. the escrow analysis and all loan documents), name each document properly, and save each document individually to the case management system.

b)   Review of the 410A loan history, if applicable

Review screens from our client's system as well as the POC figures and the prepared loan history;

- Ensure that the loan history begins with the oldest fee (i.e. First Date of Default); each date, number, description, etc. of the loan history must be reviewed and verified against the other documentation;

- Compare the prepared loan history against our client's POC figures; if there is a discrepancy, our client must be consulted;

- Check invoices to ensure that our client included any foreclosure fees and costs, if applicable.

b)   Prepare the POC

- Input all information and figures into separate fields within our case management

---

[3] POC Figures, Endorsed Note/Allonge, Copy of Recorded Deed, Copy of AOM, Copies of Invoices, Correct Movant Name, Escrow Analysis run at the time of the filing, Copy of any Loan Modifications, and Right to Foreclosure Language, Merger Docs, Loan History information, approval to add recently incurred fees and costs from a foreclosure action and other information as might be needed.

system;

- Merge the POC document and review said document against the figures, loan documents, and escrow analysis;

- Submit POC for attorney review

d)    Clarify Figures and Validate POC (approximately 20 minutes)

- After an attorney has reviewed and approved the prepared POC, the paralegal must convert the POC form (Word document), escrow analysis and loan documents (PDF documents) into one large PDF document (the "POC package") and upload the POC package into the client system for the client to review;

- Await approval from our client before filing POC.

- Of note, most POCs require at least one redo and often several.

e)    File and Serve POC (approximately 20 minutes)

- E-file POC;

- Provide a filed copy of the POC to our client;

- Update both Rubin Lublin, TN, PLLC's case management system and our client's system to show that the POC has been filed and submit for billing.

Work performed by the attorney

a)    Review the POC and all supporting documents

- Review all documents for redactions of personal identifies;

- Review loan documents to ensure that the Note is properly endorsed, the Deed is properly assigned out of MERS and into the Movant's name, and that the POC properly reflects the interest rate and type of loan as oftentimes a loan modification agreement must also be filed with the POC;

- Review all communications between the paralegal and our client regarding the POC. The paralegal must save all relevant communications to the "File Notes" section of the Rubin Lublin, LLC case management system so that the attorney can review and assess the correspondence over the final prepared POC.

- Ensure that any post-petition payments added per the Plan are properly reflected in the POC if applicable;

- Review the escrow analysis to determine whether it properly supports the escrow components contained in the prepared POC;

- Advise paralegal regarding our client's edits and questions, and provide approval to upload the POC Package to our client for review.

- The attorney will review each "redo" as and when our client makes changes to correct or supplement the figures and information provided. As previously mentioned, there is typically at least one redo and often several.

The $425.00 legal fee charged for filing of the Proof of Claim was only charged once the Proof of Claim was filed. In light of the above, the fee is clearly reasonable and was earned by Rubin Lublin TN, PLLC. This Court should deny the Rule 3002.1 Motion.

## C.     THERE IS NO BASIS TO IMPOSE SANCTIONS

Lastly, the Debtor made a serious and unfounded allegation that "the actions and or charges complained of herein are part of a systemic problem" and requests sanctions, attorney's fees, and costs. Aside from failing to set forth any facts to show what the actions at issue are, there is no authority to impose sanctions. As noted above, Rule 3002.1(i) only allows for sanctions for failure to disclose fees and charges, not issues disclosed fees and charges. Rule 9011 – the standard avenue for sanctions – cannot apply here because a motion seeking

sanctions must be served at least 21 days before it is filed to allow time for the complained of

filing to be corrected or withdrawn, and must be "made separately from other motions or

requests and shall describe the specific conduct alleged to violate [Rule 9011(b)]." Fed. R.

Bankr. P. 9011(c)(1)(A). The Debtor combined her request for sanctions with another motion,

and also did not comply with the 21 day safe harbor provision.

The only other known basis for moving for sanctions is 28 U.S.C. § 1927,[4] which

provides that

> Any attorney or other person admitted to conduct cases in any court of the United
> States or any Territory thereof who so multiplies the proceedings in any case
> unreasonably and vexatiously may be required by the court to satisfy personally
> the excess costs, expenses, and attorneys' fees reasonably incurred because of
> such conduct.

The Bankruptcy Appellate Panel for the Sixth Circuit has clearly organized the binding

case law on the standard that must be met to impose sanctions under § 1927:

> Sanctions are warranted under § 1927 if counsel "falls short of the obligations
> owed by a member of the bar to the court and which, as a result, causes additional
> expense to the opposing party." *Rentz v. Dynasty Apparel Indus., Inc.,* 556 F.3d
> 389, 396 (6th Cir.2009) (citation omitted). Sanctions require "more than
> negligence or incompetence" but "something less than subjective bad faith." *Hall
> v. Liberty Life Assurance Co. of Boston,* 595 F.3d 270, 276 (6th Cir.2010)
> (citation omitted). Sanctions under § 1927 may not be imposed because a claim
> was ultimately unsuccessful. An attorney that reasonably believes his claim is
> meritorious is not subject to sanctions. *Ridder v. City of Springfield,* 109 F.3d 288,
> 297–98 (6th Cir.1997). "Discrete acts of vexatious conduct should be identified
> and a determination made whether they were done in bad faith or, even if bad
> faith was not present, whether they multiplied the proceedings pursuant to 28
> U.S.C. § 1927." *Riddle v. Egensperger,* 266 F.3d 542, 556 (6th Cir.2001)
> (quoting *In re Ruben,* 825 F.2d 977, 990 (6th Cir.1987)). As further explained by
> the Sixth Circuit:
>
>> Litigation conduct is reviewed "for 'unreasonable and vexatious'
>> multiplication of litigation despite the absence of any conscious
>> impropriety." *Jones,* 789 F.2d at 1230. Absent a showing of bad faith,
>> sanctions may be imposed "at least when an attorney knows or reasonably

---

[4] During the undersigned's phone call with the Debtor's attorney, she suggested that this statute
was the authority she was attempting to use to seek sanctions.

should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Ridder*, 109 F.3d at 298, *quoting Jones*, 789 F.2d at 1230. "[T]he mere finding that an attorney failed to undertake a reasonable inquiry into the basis for a claim does not automatically imply that the proceedings were intentionally or unreasonably multiplied." *Ridder*, 109 F.3d at 298. "An attorney is liable under § 1927 solely for excessive costs resulting from the violative conduct." *Id.* at 299. Simple inadvertence or negligence that frustrates the trial judge will not support a sanction under § 1927. *In re Ruben*, 825 F.2d at 984. "There must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Id.* "A sanction is generally improper where a successful motion could have avoided any additional legal expenses by defendants." *Id.* at 988.
*Id.* at 553.

*In re Royal Manor Mgmt., Inc.*, 525 B.R. 338, 365 (B.A.P. 6th Cir. 2015), aff'd, 652 F. App'x 330 (6th Cir. 2016).

In light of this standard, it is obvious that no basis for sanctions exist here. Lakeview, through counsel, filed a 3002.1 Notice that fully complied with the rules, and set forth fees that was actually incurred and paid to counsel. That is the purpose of Rule 3002.1, and it cannot seriously be argued that a party can be sanctioned for faithfully adhering to the Federal Rules of Bankruptcy Procedure. The Debtor is misguided in her attempt to seek sanctions, and the 3002.1 Motion should be denied in its entirety.

## **CONCLUSION**

Based on the foregoing, Lakeview respectfully requests that this Court deny the Debtor's 3002.1 Motion.

Respectfully submitted, this 21st day of September, 2018.

/s/ Bret J. Chaness
BRET J. CHANESS (BPR # 31643)
**RUBIN LUBLIN TN, PLLC**
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, Georgia 30071
(678) 281-2730 (Telephone)
(404) 921-9016 (Facsimile)
bchaness@rubinlublin.com

*Attorney for Lakeview Loan Servicing, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2018, a true and correct copy of the within and foregoing was filed via CM/ECF, which will serve notice on all required parties. Additionally, a true and correct copy was sent via U.S. First Class mail, addressed to the following:

Holly Schumpert
2552 Poplar Avenue, Suite 4F
Memphis, TN 38112

George W. Stevenson
Chapter 13 Trustee
5350 Poplar Avenue, Suite 500
Memphis, TN 38119

U.S. Trustee
Office of the United States Trustee
One Memphis Place
200 Jefferson Avenue, Suite 400
Memphis, TN 3103

/s/ Bret J. Chaness
BRET J. CHANESS (BPR # 31643)

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC  20410-8000

ASSISTANT SECRETARY FOR HOUSING-
FEDERAL HOUSING COMMISSIONER

**February 5, 2016**

| | |
|---|---|
| **To** **All Approved Mortgagees** | **MORTGAGEE LETTER 2016-03** |

| | |
|---|---|
| **Subject** | **Single Family Foreclosure Policy and Procedural Changes for HUD Title II Forward Mortgages and Reverse Mortgages** |
| **Purpose** | The purpose of this Mortgagee Letter is to update HUD's:<br>• Reasonable Diligence timeframes in thirty-two (32) jurisdictions; and<br>• Provide guidance on judicial foreclosure of FHA-insured home loans in the District of Columbia (D.C.). |
| **Effective Date** | The updated Reasonable Diligence timeframes are effective for all cases in which the deadline for taking First Legal Action to initiate foreclosure occurs on or after January 1, 2016.<br><br>The updated Schedule of Attorney Fees is effective for all cases in which any of the following actions occurs on or after January 1, 2016:<br>• a first legal action to foreclose is initiated;<br>• a bankruptcy clearance is undertaken;<br>• a possessory action has begun; or<br>• a deed-in-lieu of foreclosure is recorded.<br><br>The Cash for Keys' Relocation allowances are effective for all FHA-insured mortgages for which a foreclosure sale or non-conveyance transaction is held on or after January 1, 2016. |
| **Affected Policy** | As of the relative effective date of this Mortgagee Letter, the guidance set forth in this Mortgagee Letter supersedes all prior Reasonable Diligence timeframes, including those outlined in Mortgagee Letters 2013-38 and 2015-24. |

EXHIBIT A

| | |
|---|---|
| **Foreclosures in the District of Columbia** | Loans secured by a Deed of Trust are generally foreclosed using non-judicial procedures provided in the District of Columbia pursuant to D.C. Code § 42-815. However, mortgagees may elect to foreclose using judicial procedures, pursuant to D.C. Code § 42-816, when the mortgagee determines it is warranted for a particular mortgage.

A standard attorney fee of $2,250 is applicable for a D.C. judicial foreclosure proceeding. The reasonable diligence timeframe for a judicial foreclosure is the same as that for a non-judicial foreclosure as provided in Attachment 1. |
| **Reasonable Diligence Requirements** | Pursuant to HUD regulation at 24 CFR 203.356(b), when foreclosure of a defaulted loan is necessary, mortgagees "must exercise reasonable diligence in prosecuting the foreclosure proceedings to completion and in acquiring title to and possession of the property." This regulation also states that HUD will make available to mortgagees a timeframe that constitutes "reasonable diligence" for each state.

Please see Attachment 1 for details on the First Legal Action necessary to initiate foreclosure on an FHA-insured mortgage, the typical security instrument to be used, and the Reasonable Diligence timeframes for completing foreclosure and acquisition of title in each state. HUD reserves the right to alter these state-specific timeframes to reflect evolving foreclosure completion timeframes and jurisdictional docket demands.

The Reasonable Diligence timeframe begins with the First Legal Action, required by the jurisdiction, to commence foreclosure and ends with the later date of acquiring good marketable title and possession of the property (i.e., assuming occupied conveyance has not been approved). HUD expects mortgagees to comply with all federal, state and local laws when prosecuting a foreclosure and pursuing a possessory action. |
| **Reasonable Diligence Compliance: Related to Self-Curtailment** | Mortgagees are responsible for self-curtailment of interest and property expenses[1] on single-family claims when Reasonable Diligence timeframes or reporting requirements are not met. Mortgagees must identify the Interest Curtailment Date on form HUD-27011, Item 31. Attachment 2 includes examples for calculating the Interest Curtailment Date.

If a mortgagee determines that it failed to properly self-curtail at claim submission, the mortgagee must remit any improper claim-related payment to HUD through the "Claim Remittance" feature in FHA Connection. For more information on remitting payments, see FHA's "Quick Start Guide: Claims Processing Functions" at: https://entp.hud.gov/qckstart/sfsclaim.cfm. |

---

[1] Property expenses do not include real estate taxes and hazard insurance premiums.

**Delays and Compliance with Reasonable Diligence Timeframes**

When certain delays in completing foreclosure and acquiring possession are caused by circumstances beyond the mortgagee's control, the mortgagee may obtain an extension to Reasonable Diligence timeframes. The period of time associated with delays in completing the foreclosure process may be excluded from the calculation of the time to complete foreclosure when HUD has granted an extension *or* permitted the use of an automatic extension.

The following are examples of delays that may be deemed to be acceptable pursuant to the provisions of this Mortgagee Letter:

- Mediation;
- Bankruptcy; and
- Acquiring Possession.

The mortgagee must maintain a comprehensive audit trail and chronology to support any delay in compliance with the Reasonable Diligence timeframes herein.

**Reasonable Diligence Timeframe Delay due to Mediation**

When mediation is required after the initiation of foreclosure but, before the foreclosure sale, the time required to complete the mediation may be excluded when determining the mortgagee's compliance with FHA's Reasonable Diligence timeframes.

**Reasonable Diligence Timeframe Delay due to Bankruptcy**

When a mortgagor files for bankruptcy after the initiation of foreclosure, an automatic extension of the Reasonable Diligence timeframe for foreclosure and acquisition of the property are granted provided:

- The mortgagee ensures that all necessary bankruptcy-related legal actions are handled in a timely and effective manner;
- The case is promptly referred to a bankruptcy attorney after the bankruptcy is filed; and
- The mortgagee monitors the action to ensure that the case is timely resolved.

The timeframe allowed for recommencing foreclosure will vary based on the Chapter under which the bankruptcy is filed as provided below:

- For a Chapter 7 bankruptcy, HUD automatically grants an extension through the date that is 90 days after the date of the release of stay;
- For Chapter 11, 12, or 13 bankruptcies, HUD automatically grants an extension through the date that is 90 days from the date that the payments under the Bankruptcy Plan became 60 days delinquent.

For bankruptcy delays beyond the automatic extensions granted above, the mortgagee may request an additional extension of time from HUD via EVARS. In its request, the mortgagee must include documentation that the delay was not due to: (1) the mortgagee's failure to timely notify its bankruptcy attorney; or (2) any failure of the mortgagee's attorney.

Mortgagees will only be reimbursed for legal expenses related to resolving bankruptcies associated with claims for FHA-insured mortgages, if such legal expenses have not already been included in a loss mitigation option.

---

**Delay due to Legal Action for Acquiring Possession**

When a separate legal action is necessary to gain possession following foreclosure, an automatic extension of the Reasonable Diligence timeframe will be allowed for the actual time necessary to complete the possessory action (i.e., if occupied conveyance was not approved). This extension is granted if the mortgagee takes the First Legal Action to initiate the eviction or possessory action within 30 calendar days of:

- the completion of foreclosure proceedings, or
- the expiration of federal, state or local restrictions on evictions.

Upon the expiration period associated with the applicable occupancy rights, mortgagees are expected to proceed promptly with possessory actions.

---

**Schedule of Attorney Fees**

HUD has updated its Schedule of Attorney Fees for the purpose of calculating the maximum amount that may be reimbursed in an FHA insurance claim for a foreclosure attorney fee, bankruptcy clearance fee, possessory action fee, and completion of a deed-in-lieu fee (See Attachment 3). The Schedule of Attorney Fees reflects the customary legal services pertinent to mortgage defaults. Please note that each amount on the schedule is the total maximum reimbursable amount, instead of an hourly rate. The amount claimed for attorney fees cannot exceed the fees charged for work actually performed. Though actual costs for these legal services may potentially exceed fee amounts in the attached schedule, HUD will only reimburse mortgagees up to the amounts on the schedule.

The Schedule of Attorney Fees does not reflect additional expenses incurred due to foreclosure and/or mediation because of the wide differences in costs and lengths of time of foreclosure completion, depending on the jurisdictions in which the foreclosure actions are occurring. Any additional expenses incurred due to required legal actions (e.g., mediation or probate proceedings) are claimable with a documented cost breakdown and a written justification that must be retained in the servicer's claim review file.

When a mortgagee ceases a foreclosure action to perform required loss mitigation or where the mortgage is reinstated or paid-in-full, the mortgagee may only charge the mortgagor for attorney's fees incurred for the work actually performed up to the point of the cessation. Additionally, the amount charged to the mortgagor may not exceed the schedule for attorney's fees established by HUD as reasonable and customary for claim purposes.

---

**Technology Fees and Electronic Invoice Fees**

HUD will not reimburse as part of a mortgagee's claim for mortgage insurance benefits any expenses incurred in connection with payment of technology fees or electronic invoice fees charged by the mortgagee or any entity utilized by the mortgagee. This includes any fees charged:

- on a per loan basis;
- on a "click charge basis"; or
- for entering or accessing data in the mortgagees' system(s) or any other system.

**Cash for Keys' Relocation Allowance (Forward Mortgages Only)**

After foreclosure, FHA allows mortgagees to offer a monetary consideration, known as "Cash for Keys", as an alternative to legal eviction.

If property occupants fail to vacate a property after receiving the first Notice to Quit, the mortgagee may offer up to $3,000 per dwelling in exchange for the occupants vacating the property within 30 days of the Cash for Keys' Relocation offer.

**Information Collection Requirements**

The information collection requirements contained in this document have been approved by the Office of Management and Budget (OMB) under the Paperwork Reduction Act of 1995 (44 U.S.C. 3501-3520) and assigned OMB control number 2502-0584. In accordance with the Paperwork Reduction Act, HUD may not conduct or sponsor, and a person is not required to respond to, a collection of information unless the collection displays a currently valid OMB Control Number.

**Questions**

Any questions regarding this Mortgagee Letter may be directed to the HUD National Servicing Center at (877) 622-8525. Persons with hearing or speech impairments may reach this number by calling the Federal Relay Service at (800) 877-8339. For additional information on this Mortgagee Letter, please visit www.hud.gov/answers.

**Signature**

Edward L. Golding
Principal Deputy Assistant Secretary for Housing

Attachments

**ATTACHMENT 1**                                                    Page 1 of 2

### FIRST LEGAL ACTIONS TO INITIATE FORECLOSURE AND
### REASONABLE DILIGENCE TIMEFRAMES EFFECTIVE 1/1/2016

| State Code | State | Typical Type of HUD Security Instrument | Normal Method of Foreclosure | First Legal Action to Initiate Foreclosure | Reasonable Diligence Timeframe (in months) |
|---|---|---|---|---|---|
| 01 | Alabama | Mortgage | Non-Judicial | Publication | 6 |
| 11 | Alaska | Deed of Trust | Non-Judicial | Recording of Notice of Default | 10 |
| 02 | Arizona | Deed of Trust | Non-Judicial | Recording of Notice of Sale | 6 |
| 03 | Arkansas | Deed of Trust | Non-Judicial | Recording of Notice of Sale | 11 |
| 04 | California | Deed of Trust | Non-Judicial | Recording of Notice of Default | 12 |
| 05 | Colorado | Deed of Trust | Non-Judicial | Filing of Foreclosure Documents with Public Trustee | 12 |
| 06 | Connecticut | Mortgage | Judicial | Delivering Complaint to Sheriff | 21 |
| 07 | Delaware | Mortgage | Judicial | Complaint | 26 |
| 08 | District of Columbia | Deed of Trust | Non-Judicial | Notice of Default to Mayor | 7 |
| 09 | Florida | Mortgage | Judicial | Complaint | 25 |
| 10 | Georgia | Security Deed | Non-Judicial | Publication | 6 |
| 83 | Guam | Mortgage | Non-Judicial | Posting and Publishing of Notice of Sale | 11 |
| 14 | Hawaii | Mortgage | Judicial | Complaint | 30 |
| | | Mortgage | Non-Judicial | Publication of Notice of Intent to Foreclose | 6 |
| 12 | Idaho | Deed of Trust | Non-Judicial | Recording of Notice of Default | 13 |
| 13 | Illinois | Mortgage | Judicial | Complaint | 17 |
| 15 | Indiana | Mortgage | Judicial | Complaint | 13 |
| 16 | Iowa | Mortgage | Judicial | Petition | 17 |
| | | Deed of Trust | Non-Judicial | Filing of Notice or Voluntary Foreclosure Agreement with Recorder | 9 |
| 18 | Kansas | Mortgage | Judicial | Complaint | 10 |
| 20 | Kentucky | Mortgage | Judicial | Complaint | 14 |
| 22 | Louisiana | Mortgage | Judicial | Petition for Executory Process | 12 |
| 23 | Maine | Mortgage | Judicial | Complaint | 27 |
| 24 | Maryland | Mortgage | Judicial | Complaint | 18 |
| | | Deed of Trust | Non-Judicial | Filing an Order to Docket | 18 |
| 25 | Massachusetts | Mortgage | Non-Judicial | Filing of Complaint[2] | 9 |
| 26 | Michigan | Mortgage | Non-Judicial | Publication | 9 |

---

[2] The mortgagee must first obtain a judgment from the Land Court verifying that the mortgagors are not entitled to relief under the Servicemembers Civil Relief Act (SCRA).

**ATTACHMENT 1**                                                    Page 2 of 2

| State Code | State | Typical Type of HUD Security Instrument | Normal Method of Foreclosure | First Legal Action to Initiate Foreclosure | Reasonable Diligence Timeframe (in months) |
|---|---|---|---|---|---|
| 27 | Minnesota | Mortgage Deed | Non-Judicial | Publication | 10 |
| 28 | Mississippi | Deed of Trust | Non-Judicial | Publication | 9 |
| 29 | Missouri | Deed of Trust | Non-Judicial | Publication | 5 |
| 31 | Montana | Trust Indenture | Non-Judicial | Recording of Notice of Sale | 9 |
| 32 | Nebraska | Mortgage | Judicial | Petition | 8 |
|  |  | Deed of Trust | Non-Judicial | Publication of Notice of Sale | 8 |
| 33 | Nevada | Deed of Trust | Non-Judicial | Recording of Notice of Default | 24 |
| 34 | New Hampshire | Mortgage | Non-Judicial | Publication | 11 |
| 35 | New Jersey | Mortgage | Judicial | Complaint | 19 |
| 36 | New Mexico | Mortgage | Judicial | Complaint | 25 |
| 37 | New York City | Mortgage | Judicial | Complaint | 27 |
|  | New York | Mortgage | Judicial | Complaint | 21 |
| 38 | North Carolina | Deed of Trust | Non-Judicial | Notice of Hearing | 9 |
| 40 | North Dakota | Mortgage | Judicial | Complaint | 15 |
| 41 | Ohio | Mortgage Deed | Judicial | Complaint | 13 |
| 42 | Oklahoma | Mortgage | Judicial | Petition | 14 |
| 43 | Oregon | Deed of Trust | Non-Judicial | Recording of Notice of Default | 30 |
| 44 | Pennsylvania | Mortgage | Judicial | Complaint | 21 |
| 50 | Puerto Rico | Mortgage | Judicial | Complaint | 21 |
| 45 | Rhode Island | Mortgage | Non-Judicial | Publication | 22 |
| 46 | South Carolina | Mortgage | Judicial | Complaint | 14 |
| 47 | South Dakota | Mortgage | Judicial | Complaint | 14 |
|  |  | Deed of Trust | Non-Judicial | Publication of Notice of Sale | 9 |
| 48 | Tennessee | Deed of Trust | Non-Judicial | Publication | 6 |
| 49 | Texas | Deed of Trust | Non-Judicial | Posting and Filing of the Notice of Sale | 8 |
| 52 | Utah | Mortgage | Judicial | Complaint | 12 |
|  |  | Deed of Trust | Non-Judicial | Recording of Notice of Default | 12 |
| 53 | Vermont | Mortgage | Judicial | Complaint | 24 |
| 54 | Virginia | Deed of Trust | Non-Judicial | Publication | 7 |
| 82 | Virgin Islands | Mortgage | Judicial | Complaint | 15 |
| 56 | Washington | Deed of Trust | Non-Judicial | Recording of Notice of Trustee's Sale | 18 |
| 57 | West Virginia | Deed of Trust | Non-Judicial | Publication | 7 |
| 58 | Wisconsin | Mortgage | Judicial | Complaint | 12 |
| 59 | Wyoming | Mortgage | Non-Judicial | Publication | 7 |

**ATTACHMENT 2**                                                    Page 1 of 4

## CALCULATING THE INTEREST CURTAILMENT DATE

     The following examples illustrate how to calculate the date on which debenture interest should be claimed.  This calculation will take into account the date on which the First Legal Action to initiate foreclosure was taken and the reporting cycle in which the action was properly reported, pursuant to 24 CFR 203.356(a).  Mortgagees will be considered in compliance with the reporting requirements of 24 CFR 203.356(a) when the case is properly reported in the Single Family Default Monitoring System (SFDMS) for the reporting cycle (or the subsequent reporting cycle) in which the First Legal Action required to initiate foreclosure is taken.

     If there was more than one missed requirements, interest should be curtailed to the earliest date on which a required action should have been taken.  Mortgagees will be responsible for self-curtailment and must identify the appropriate Interest Curtailment Date on form HUD-27011, Item 31 (Mortgagee Reported Curtailment Date).

**Example 1:**  Mortgagee failed to initiate foreclosure on a timely basis in the State of Michigan.

| | |
|---|---|
| Date of Default | 09/01/2012 |
| Deadline to initiate foreclosure | 03/01/2013 |
| First Legal Action to foreclose | 04/21/2013 |
| SFDMS reflects Status 68[1] for reporting cycle ending | 04/30/2013 |
| Marketable Title Date | 10/31/2013 |
| Date reflected in Item 9 (Date of possession) of form HUD-27011 | 11/30/2013 |
| Date reflected in Item 10 (Date deed or assignment filed for record or date of closing or appraisal) | 12/28/2013 |

     In this example, the mortgagee did not initiate foreclosure within six months of the date of default as required by 24 CFR 203.355(a).  The claim system will automatically curtail interest to March 1, 2013, (i.e., the deadline to initiate foreclosure within six months from the default date).

**Example 2:**  Mortgagee initiated foreclosure on a timely basis but, exceeded seven months of the District of Columbia's reasonable diligence timeframe for completing the action without a valid documented reason.

| | |
|---|---|
| Date of Default | 12/01/2012 |
| First Legal Action to foreclose | 05/10/2013 |
| SFDMS reflects Status 68[1] for reporting cycle ending | 05/30/2013 |
| Marketable Title Date | 12/31/2013 |
| Date reflected in Item 9 (Date of possession-1/31/14 & acquisition of marketable title-12/31/13) of form HUD-27011 | 01/31/2014 |
| Date reflected in Item 10 (Date deed or assignment filed for record or date of closing or appraisal) | 02/28/2014 |

---

[1] First Legal Action to Commence Foreclosure

**ATTACHMENT 2**                                                                 Page 2 of 4

In this example, the mortgagee initiated foreclosure within six months of the date of default as required by 24 CFR 203.355(a) and, within the required reporting cycle, properly reported the action in SFDMS using Status Code 68.  However, the mortgagee did not meet the reasonable diligence requirement for completing the foreclosure in seven months (by December 10, 2013, based on the May 10 initiation of foreclosure).  This requires a curtailment of interest to December10, 2013, and that date would have to be reflected on form HUD-27011, Item 31 (Mortgagee Reported Curtailment Date).

**Example 3**:  A timely initiated foreclosure action in the State of Wisconsin is delayed by a mortgagor's Chapter 7 bankruptcy filing, but the mortgagee took more than 90 days from the release of bankruptcy to resume the foreclosure.

| | |
|---|---|
| Date of Default | 12/01/2012 |
| First Legal Action to foreclose | 04/10/2013 |
| SFDMS reflects Status 68 for reporting cycle ending | 04/30/2013 |
| Date Chapter 7 Bankruptcy filed | 05/10/2013 |
| Date reflected in Item 21 (Date of release of bankruptcy, if applicable) of form HUD-27011 | 09/15/2013 |
| End of authorized 90-day bankruptcy delay | 12/14/2013 |
| Foreclosure Resumed Date | 12/28/2013 |
| Marketable Title Date | 08/25/2014 |
| Date reflected in Item 9 (Date of possession-8/30/14 & acquisition of marketable title-8/25/14) of form HUD-27011 | 08/30/2014 |
| Date reflected in Item 10 (Date deed or assignment filed for record or date of closing or appraisal) | 09/18/2014 |

In this example, the mortgagee initiated foreclosure within six months of the date of default as required by 24 CFR 203.355(a) and, within the required reporting cycle, properly reported the action in SFDMS using Status Code 68.  However, the reasonable diligence requirement for completing the foreclosure was not met.

The State of Wisconsin's Reasonable Diligence timeframe for foreclosure completion is twelve months; without delays, the foreclosure should have been completed by April 10, 2014.  However, due to bankruptcy interruption, the reasonable diligence timeframe was extended by 128 days (May 10, 2013 to September 15, 2013) to August 16, 2014.  Due to the mortgagee's failure to resume the foreclosure within 90 days from release of the bankruptcy, the authorized 90-day bankruptcy delay will not be granted to extend the reasonable diligence timeframe.  The interest curtailment date for claim purposes would therefore be August 16, 2014, and that date would have to be reflected on form HUD-27011, Item 31 (Mortgagee Reported Curtailment Date).

**Example 4**:  A timely initiated foreclosure action is delayed by a mortgagor's Chapter 13 bankruptcy filing in the State of Wisconsin and the mortgagor subsequently defaulted on a confirmed Bankruptcy Plan.  The mortgagee took more than 90 days from the date that the bankruptcy plan payments become 60 days delinquent to resume the foreclosure.

**ATTACHMENT 2**                                                        Page 3 of 4

| | |
|---|---|
| Date of Default | 04/01/2013 |
| First Legal Action to foreclose | 09/09/2013 |
| SFDMS reflects Status 68 for reporting cycle ending | 09/30/2013 |
| Date Chapter 13 Bankruptcy filed | 10/09/2013 |
| Mortgagor's timely Bankruptcy Plan Payments Nov through Feb advance Date of Default to | 08/01/2013 |
| Bankruptcy Plan Payments became delinquent (automatic stay lifted) | 04/30/2014 |
| End of authorized 90-day bankruptcy delay to resume foreclosure | 07/29/2014 |
| Foreclosure Resumed Date | 08/21/2014 |
| Date reflected in Item 21 (Date of release of bankruptcy) of form HUD-27011 | 09/10/2014 |
| Marketable Title Date | 06/13/2015 |
| Date reflected in Item 9 (Date of possession-7/11/15 & acquisition of marketable title-06/13/15) of form HUD-27011 | 07/11/2015 |
| Date reflected in Item 10 (Date deed or assignment filed for record or date of closing or appraisal) | 08/04/2015 |

In this example, the mortgagee properly initiated foreclosure within six months of the date of default as required by 24 CFR 203.355(a) and, within the required reporting cycle, reported the action in SFDMS using Status Code 68. However, the reasonable diligence requirement to resolve the Chapter 13 bankruptcy case and complete the foreclosure was not met, and the mortgagee did not provide any documentation demonstrating that it was not responsible for the delay; therefore, the mortgagee must self-curtail.

Bankruptcy Plan payments, due on the first of each month, became 60 days delinquent on April 30, 2014; therefore, the automatic stay was lifted. Pursuant to HUD's policy, the mortgagee had a maximum of 90 days from April 30, 2014, to resume the foreclosure. However, the mortgagee did not resume foreclosure within 90 days from April 30, 2014. As a result, the authorized 90-day bankruptcy delay will not be granted in this case.

For purposes of filing a claim, the total authorized delay due to the bankruptcy was 203 days (October 9, 2013 to April 30, 2014). The mortgagee's timeframe for meeting the reasonable diligence requirement in this case is 12 months plus 203 days (the authorized bankruptcy-related delay) after the date of the first legal action to foreclose. Accordingly, the Interest Curtailment Date for claim purposes is March 31, 2015, and this date must be reflected on form HUD-27011, Item 31 (Mortgagee Reported Curtailment Date).

**Example 5:** The mortgagee exercised reasonable diligence in completing a foreclosure in the State of Iowa but did not initiate eviction or possessory action within 30 calendar days of foreclosure completion to qualify for an extension of the Reasonable Diligence timeframe.

| | |
|---|---|
| Date of Default | 01/01/2013 |
| First Legal Action to foreclose | 05/10/2013 |
| SFDMS reflects Status 68 for reporting cycle ending | 06/30/2013 |
| Marketable Title Date | 01/10/2014 |

**ATTACHMENT 2**                                                                                      Page 4 of 4

| Deadline to initiate possessory action | 02/09/2014 |
|---|---|
| Possessory action initiated | 02/19/2014 |
| Date of Possession (1st vacant date/eviction date) | 03/13/2014 |
| Date reflected in Item 9 (Date of possession-3/13/14 & acquisition of marketable title-01/10/14) of form HUD-27011 | 03/13/2014 |
| Date reflected in Item 10 (Date deed or assignment filed for record or date of closing or appraisal) | 04/02/2014 |

In this example, the mortgagee met the reasonable diligence requirements to initiate, report, and complete the foreclosure action. However, action to acquire possession of the property was not initiated within 30 calendar days of foreclosure completion. The foreclosure was completed on January 10, 2014, so the mortgagee had 30 days (i.e., until February 9, 2014) to initiate possessory action. As the mortgagee did not initiate possessory action until February 19, 2014, a curtailment of interest is required and the date of February 19, 2014 would have to be reflected on form HUD-27011, Item 31 (Mortgagee Reported Curtailment date).

**Example 6**:  The mortgagee failed to convey a property in District of Columbia to HUD within 30 calendar days of acquiring possession and marketable title, as required by 24 CFR 203.359.

| Date of Default | 01/01/2013 |
|---|---|
| First Legal action to foreclose | 05/10/2013 |
| SFDMS reflects Status 68 for reporting cycle ending | 06/30/2013 |
| Marketable Title Date | 11/30/2013 |
| Date reflected in Item 9 (Date of possession-12/29/13 & acquisition of marketable title-11/30/13) of form HUD-27011 | 12/29/2013 |
| Deadline to convey to HUD | 01/28/2014 |
| Date reflected in Item 10 (Date deed or assignment filed for record or date of closing or appraisal) | 02/28/2014 |

In this example, the mortgagee exercised reasonable diligence in prosecuting the foreclosure to completion and in acquiring title to and possession of the property. However, it did not meet the requirement to convey the property to HUD within 30 calendar days of acquiring possession and marketable title as required by 24 CFR 203.359.

Date of Possession and Acquisition of Marketable Title was acquired by the mortgagee on December 29, 2013, and the mortgagee had 30 days from that date (i.e., until January 28, 2014) to convey the property to HUD. The deed to HUD was not filed for recording until February 28, 2014. Accordingly, the mortgagee's failure to timely convey the property to HUD requires a curtailment of interest to January 28, 2014, and this date must be reflected on form HUD-27011, Item 31 (Mortgagee Reported Curtailment Date).

**ATTACHMENT 3**                                                                 Page 1 of 3

## HUD SCHEDULE OF STANDARD ATTORNEY FEES – EFFECTIVE 1/1/2016

| State | Non-judicial Foreclosure | Judicial Foreclosure | Bankruptcy Clearance | Possessory Action | Deed-in-lieu |
|-------|--------------------------|----------------------|----------------------|-------------------|--------------|
| AK | $1,625 | | Varies[13] | $500 | $400 |
| AL | $1,325[1] | | Varies[13] | $500 | $400 |
| AR | $1,475 | | Varies[13] | $500 | $400 |
| AZ | $1,350 | | Varies[13] | $400 | $400 |
| CA | $1,425[2] | | Varies[13] | $550 | $400 |
| CO | $1,650 | | Varies[13] | $450 | $400 |
| CT | | $2,450[3,4] | Varies[13] | $400 | $400 |
| DC | $1,200[1] | $2,250 | Varies[13] | $400 | $400 |
| DE | | $1,900 | Varies[13] | $450 | $400 |
| FL | | $2,800[11] | Varies[13] | $400 | $400 |
| GA | $1,325 | | Varies[13] | $450 | $400 |
| GU | $1,625 | | Varies[13] | $350 | $400 |
| HI | | $2,950[7] | Varies[13] | $525 | $400 |
| IA | $1,275 | $1,850 | Varies[13] | $350 | $400 |
| ID | $1,250 | | Varies[13] | $400 | $400 |
| IL | | $2,300 | Varies[13] | $400 | $400 |
| IN | | $2,050 | Varies[13] | $450 | $400 |
| KS | | $1,800 | Varies[13] | $400 | $400 |
| KY | | $2,250 | Varies[13] | $400 | $400 |
| LA | | $1,900 | Varies[13] | $500 | $400 |
| MA | $2,550 | $2,550[3] | Varies[13] | $625 | $400 |
| MD | $2,500[5] | | Varies[13] | $500 | $400 |
| ME | | $2,300 | Varies[13] | $525 | $400 |
| MI | $1,425 | | Varies[13] | $425 | $400 |
| MN | $1,450 | $1,800 | Varies[13] | $400 | $400 |
| MO | $1,375 | | Varies[13] | $450 | $400 |
| MS | $1,300[1] | | Varies[13] | $400 | $400 |
| MT | $1,250 | | Varies[13] | $400 | $400 |
| NC | $1,575 | | Varies[13] | $400 | $400 |
| ND | | $1,800 | Varies[13] | $350 | $400 |
| NE | $1,250 | $1,950 | Varies[13] | $350 | $400 |
| NH | $1,450 | | Varies[13] | $425 | $400 |
| NJ | | $2,975 | Varies[13] | $500 | $400 |
| NM | | $2,050 | Varies[13] | $400 | $400 |
| NV | $1,525 | | Varies[13] | $650 | $400 |
| NY | $,1225[9] | $2,900[3,9] | Varies[13] | $725 | $400 |
| OH | | $2,250 | Varies[13] | $600 | $400 |
| OK | | $2,000 | Varies[13] | $350 | $400 |
| OR | $1,425 | $2,600 | Varies[13] | $400 | $400 |
| PA | | $2,350 | Varies[13] | $450 | $400 |
| PR | | $2,050[3,10] | Varies[13] | $300 | $400 |
| RI | $1,725 | | Varies[13] | $525 | $400 |
| SC | | $2,200 | Varies[13] | $450 | $400 |

**ATTACHMENT 3**                                                              Page 2 of 3

| State | Non-judicial Foreclosure | Judicial Foreclosure | Bankruptcy Clearance | Possessory Action | Deed-in-lieu |
|-------|--------------------------|----------------------|----------------------|-------------------|--------------|
| SD | | $1,800 | Varies[13] | $400 | $400 |
| TN | $1,300 | | Varies[13] | $375 | $400 |
| TX | $1,325 | $1,800 | Varies[13] | $400 | $400 |
| UT | $1,325 | | Varies[13] | $400 | $400 |
| VA | $1,350 | | Varies[13] | $600 | $400 |
| VI | | $1,800 | Varies[13] | $300 | $400 |
| VT | $1,600 | $2,250 | Varies[13] | $375 | $400 |
| WA | $1,500 | | Varies[13] | $450 | $400 |
| WI | | $2,050 | Varies[13] | $400 | $400 |
| WV | $1,250[1,3] | | Varies[13] | $400 | $400 |
| WY | $1,250 | | Varies[13] | $500 | $400 |

**Footnotes:**

(1)     This fee covers the combined attorney's and notary's fees.

(2)     This fee applies to completed foreclosures. If the mortgage loan is reinstated, the maximum fee is the amount allowed under applicable law, not to exceed $725 for reinstatements after recording the Notice of Default but before mailing the Notice of Sale, or $1,075 for reinstatements after mailing the Notice of Sale but before the Trustee's sale.

(3)     An additional $200 will be permitted when the property is sold to a third party and the attorney must perform additional work to complete the transfer of title to the successful bidder.

(4)     This fee applies to Strict Foreclosures. If the court orders a Foreclosure by Sale (or a Foreclosure by Market Sale on or after January 1, 2015), the fee will be $2,700.

(5)     This fee includes the attorney's fee, the notary's fee and the trustee's commission (or statutory fee).

(6)     [Reserved]

(7)     A fee of $3,950 will be permitted for judicial foreclosures in locations other than Honolulu County.

(8)     [Reserved]

(9)     In New York, the non-judicial foreclosure process is to be used only in connection with cooperative share loans. The fee includes all steps in the foreclosure process, including the transfer of the stock and the lease for an occupied cooperative unit. The allowable fee for judicial foreclosures in New York, where judgment is obtained as a result of an uncontested trial, is established at $3,650. For judicial foreclosures in the City of New York and on Long Island (Nassau and Suffolk Counties), the allowable fee is $3,500 (or $4,250 if judgment is obtained via uncontested trial).

(10)    In addition to the allowable foreclosure fee, HUD will pay a notary fee up to the greater of $250 or one percent (1%) of the bid amount on the mortgage being foreclosed.

(11)    The allowable fee for foreclosures in Florida, where judgment is obtained as a result of an uncontested trial, is established at $3,550.

**ATTACHMENT 3**

(12)   When a servicer requests reimbursement from HUD for a fee amount based on specified conditions contained in a footnote above, the servicer's reimbursement request must contain a description or sufficient supporting documentation to allow HUD to properly evaluate the request.

(13)   This fee assumes that all required procedural steps have been completed. The maximum attorney fee varies based on the chapter under which the bankruptcy action is filed.

- For Chapter 7 bankruptcies, the maximum allowable fee is $1,175.
  1. Motion for Relief is $750
  2. Proof of Claim Preparation (if required) is $300
  3. Reaffirmation Agreement is $125

- For Chapter 11 bankruptcies, the maximum allowable fee is $1,600.
  1. Proof of Claim Preparation & Plan Review is $750
  2. Motion for Relief is $850

- For Chapter 12 bankruptcies, the maximum allowable fee is $2,100.
  1. Proof of Claim Preparation & Plan Review is $750
  2. Objection to Plan is $500
  3. Motion for Relief is $850

- For Chapter 13 bankruptcies, the maximum allowable fee is $2,850
  1. Proof of Claim Preparation & Plan Review is $650
  2. Objection to Plan is $500
  3. Motion for Relief is $850
  4. Payment Change Notification (if needed) is $50
  5. Notice of Fees, Expenses, and Charges is $100
  6. Post-Stipulation Default / Stay Termination is $50/$200
  7. Response to Final Cure Payment Notice is $50 (agreed) / $500 (objection)

Invoice Date
02/06/2018

Invoice Number
312201

Rubin Lublin, LLC

3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071
770-246-3300
www.rubinlublin.com

LOAN CARE
3637 Sentara Way
Virginia Beach, VA 23452

RE: LOAN CARE
Vs: DEIDRE DONNERSON
1790 WHITMAN DRIVE
MEMPHIS, TN 38116
Our File:

File referred by servicer

BILLING SUMMARY:

| FEES | | |
|------|------|------|
| **DATE** | **FEE DESCRIPTION** | **AMOUNT** |
| 02/02/2018 | Additional BK Attorney Fees - Non-Recoverable | $85.00 |
| 02/05/2018 | Proof of Claim - Recoverable | $425.00 |

| TOTALS | |
|------|------|
| **DESCRIPTION** | **AMOUNT** |
| Total Fees Since Last Billing | $510.00 |
| **Total Amount Due** | **$510.00** |

Thank you for the opportunity to be of service.

Exhibit B



Exhibit C